UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

Denn-Ohio, LLC,

Case No. 23-02533
Chapter 11
Hon. John T. Gregg

_____ Debtor(s) /

**COVER SHEET FOR MOTION TO USE CASH
COLLATERAL OR TO OBTAIN CREDIT**

The debtor has filed a motion to use cash collateral or to obtain postpetition financing, which is attached to this Cover Sheet. In accordance with LBR 4001-2(b), the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | ☐ Yes  ☑ No | Page ____, ¶ ____ |
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | ☐ Yes  ☑ No | Page ____, ¶ ____ |
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | ☐ Yes  ☑ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (5) Provisions that prime any lien without that lienholder's consent. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (8) Provisions for the payment of prepetition debt. | ☑ Yes<br>☐ No | Page 8, ¶ 41 |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | ☐ Yes<br>☑ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (16) Provisions that purport to bind a subsequent trustee. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |

Date: 11/01/2023

_____
[Debtor's counsel]

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

In Re:                                              Case No: 23 - 02533
                                                    Chapter 11, Subchapter V
Denn-Ohio, LLC,                                     Hon. John T. Gregg
                                                    Filed On: October 31, 2023
      Debtor.
_____/

**DENN-OHIO, LLC's EMERGENCY MOTION FOR ENTRY OF AN INTERIM AND FINAL ORDER (A) AUTHORIZING IT TO USE CASH COLLATERAL; AND (B) PROVIDING ADEQUATE PROTECTION AND OTHER RELIEF**

NOW COMES, Denn-Ohio, LLC ("Debtor"), by and through its attorneys, CBH Attorneys & Counselors, PLLC, and files its *Emergency Motion for Entry of an Interim and Final Order (A) Authorizing It to use Cash Collateral; and (B) Providing Adequate Protection and Other Relief* (the "Motion"), and in support of its Motion states as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(M).

3. Venue of this proceeding and the Motion is in this District is proper under 11 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §105(a), 361 & 363.

### PROCEEDURAL BACKGROUND

4. On October 31, 2023 ("Petition Date"), Debtor filed its Bankruptcy Petition ("Petition") under Chapter 11, Subchapter V, of the United States Bankruptcy Code ("Bankruptcy Code").

5. Debtor filed this Motion as soon as practical after the Petition Date.

6. Debtor continues to operate its business and manage its financial affairs as a debtor-in-possession pursuant to 11 U.S.C. §1184 of the Bankruptcy Code.

7. Debtor is in immediate need for an Order authorizing the use of cash collateral to meet payroll obligations, sustain its operations, and preserve its assets for the benefit of its creditors.

8. Debtor files this Motion pursuant to Fed. R. Bankr. P. 4001 and L.B.R. 4001-2 (W.D.M.).

**RELIEF REQUESTED**

9. Debtor is engaged in the operation of ten Denny's® franchise restaurants across three states.

10. Mr. Thomas F. Pilbeam, Sr. ("Pilbeam, Sr.") is Debtor's sole remaining member and has the primary responsibility to run its day-to-day operations. His declaration in support of the Motion is attached hereto as "**Exhibit A: Sworn Statement.**"

11. Debtor operates two Denny's franchise restaurants in the Western District of Michigan leased at the following locations: (i) 3127 Plainfield Ave NE, Grand Rapids, Michigan 49505 ("GR Denny's®"); and (ii) 3817 Cork St., Kalamazoo, Michigan 49001 ("Kalamazoo Denny's®).

12. Debtor operates eight additional Denny's® franchises at the following leased locations:

   a. 6920 Central Ave., Toledo, Ohio 43615 ("Toledo Denny's®");

   b. 26415 Warns Dr., Perrysburg, Ohio 43551 ("Perrysburg Denny's®");

   c. 3019 Olentangy River Rd., Coumbus, Ohio 43202 ("Columbus Denny's®");

   d. 7735 State Rd., OH-37, Berkshire Township, Ohio 43074 ("Berkshire Denny's®");

  e. 9935 State Rte. 41, Jeffersonville, Ohio 43128 ("Jeffersonville Denny's®");

  f. 2008 N. Mulberry St. Elizabethtown, Kentucky 42701 ("Elizabethtown Denny's®");

  g. 434 Eastern Pkwy, Louisville, Kentucky 40217 ("Louisville Denny's®"); and

  h. 15236 KY-180, Catlettsburg, Kentucky 41129 ("Catlettsburg Denny's®").

13. Each Denny's® restaurant is operating and in good working order. However, Debtor provided Denny's® with pre-petition notice of its intent to terminate its franchise agreements and leases for the Toledo Denny's® and the Kalamazoo Denny's ® (jointly, the "Underperforming Franchises"). Debtor is also evaluating whether to terminate the franchise agreements and leases for the Louisville Denny's® and the Columbus Denny's®.

14. In addition, Debtor is affiliated with PTS Hospitality, LLC ("PTS"), which operates two Denny's® franchise restaurants, and with JMAD Hospitality, LLC ("JMAD"), which operates five Denny's® franchise restaurants. Debtor, JMAD, and PTS cross collateralized, cross guaranteed, and cross defaulted loans to their primary secured creditor, First Franchise Credit Corporation ("FFCC"), which is owed approximately $3,353,000.00, as described in more detail herein. Upon information and belief, PTS and JMAD will each sell or liquidate all of their Denny's® restaurants.

15. As a result of financial complications that resulted from the COVID-19 pandemic, including increased inventory costs, labor costs, and delivery fees, the Underperforming Franchises have been subsidized by Debtor's remaining restaurants.

16. Debtor anticipates that its net income will significantly increase as a result of its Chapter 11 proceeding by: (i) terminating the franchise agreements for the Underperforming

Franchises; (ii) "cramming down" its secured loan and guarantees to FFCC; and (iii) discharging most of its junior secured and unsecured claims.

17. Debtor employs approximately 85 full-time employees and 195 part-time employees.

18. Debtor's next payroll is November 10, 2023.

19. Debtor's gross receipts for tax year 2022 were $17,570,702.00.

20. Debtor is in immediate need of an Order authorizing the use of cash collateral in order to sustain its operations and preserve its assets for the benefit of the estate and the creditors while it seeks to negotiate and develop its Chapter 11, Subchapter V, Plan of Reorganization.

21. Through this Motion, Debtor seeks the entry of interim and final Orders (i) granting and affirming adequate protection to Debtor's creditors secured against cash collateral, (ii) authorizing Debtor's use of cash collateral; and (iii) scheduling a final hearing.

## DEBTOR'S CASH COLLATERAL AND SECURED CREDITORS

22. As stated, Debtor has an immediate need for use of cash collateral to continue its operations, purchase inventory, meet its payroll, and fund other ordinary post-petition operating expenditures, such as utilities and insurance, to preserve the value of its estate for the benefit of creditors.

23. Debtor prepared weekly operating projections for the first month of operations and monthly operating projections for six months of operations ("Budget"), attached as **"Exhibit B: Cash Flow Projection,"** which provide detailed projections of Debtor's anticipated sales and anticipated expenditures that are necessary for Debtor to continue ordinary operations and to avoid irreparable harm to the estate for the next 180 days.

24. Debtor believes that the value of the Cash Collateral assets will not change substantially over the next 90 days, and that Debtor can successfully reorganize.

25. As Debtor's sole member, Pilbeam Sr. has the primary responsibility for Debtor's strategic decisions, including overseeing its liabilities, assets, income, and expenses. **See Exhibit A.**

26. The following is a summary of Debtor's estimated assets on the Petition Date as disclosed in Debtor's Bankruptcy Schedules:

    a. Cash      $ 5,000.00[1]

    b. Bank Accounts      $ 463,103.00

    c. Accounts Receivable      $ 80,000.00[2]

    d. Inventory      $ 10,000.00[3]

    e. Pre-paid Taxes      $ 15,048.00

    f. Machinery, Equipment, Furniture, Electronics      $ 250,000.00[4]

    g. Vehicles and Trailers      $ N/A

    h. Goodwill      $ 1,000,000.00[5]

    i. Total Assets:      $ 1,823,151.00

27. The value of Debtor's "Cash Collateral" is approximately **$ 573,151.00**, which includes Debtor's Cash, Bank Accounts, Accounts Receivable, pre-paid taxes, and inventory.

---

[1] Debtor's cash fluctuates on a daily basis. Debtor estimated current cash assets at $500.00 per store.
[2] Debtor is typically paid at time of sale. Accordingly, Debor does not accrue substantial accounts receivable. However, Debtor's credit card sales process through Denny's corporate office, which withholds payments for franchise fees, advertising fees, and lease fees before remitting the balance to Debtor. The amount of the receivable from Denny's corporate office changes daily. Debtor estimated its current receivable from Denny's at $80,000.00, which is $8,000.00 per store.
[3] Debtor's inventory is primarily comprised of perishable food products, quick turnover inventory, and proprietary Denny's goods. Accordingly, while the book value of Debtor's inventory is estimated at $25,000.00 per store; Debtor estimates the liquidation value of its inventory at $1,000.00 per store for total inventory value of $10,000.00.
[4] Estimated at $25,000.00 per store based on liquidation evaluation prepared by Liquid Asset Partners.
[5] Debtor's good faith estimate of the total goodwill for its franchises.

28. Debtor believes the following lenders ("Secured Creditors") are likely to assert an interest in one or more of the aforementioned assets:[6]

    a. <u>Meadowbrook Meat Company ("MMC")</u>

        i. First Priority – filed February 12, 2015 (Continuation 03/15/2020)

        ii. Amount: $30,000.00[7]

    b. <u>First Franchise Capital Corporation</u>

        i. Second Priority – filed March 28, 2017

        ii. Amount: $3,353,000.00[8]

        iii. Lien on: All assets

    c. <u>Cross River Bank</u>

        i. Third Priority- filed December 29, 2022

        ii. Amount $475,000.00

        iii. Lien on: All assets.

29. Upon information and belief, there are no other secured creditors that could claim any interest in Debtor's cash collateral.[9]

---

[6] All amounts listed are estimates. Debtor has additional secured liabilities; however, none of those liabilities are secured against cash collateral. Each additional secured liability is secured to specific personal property, including real property, vehicles, and equipment.

[7] MMC is Debtor's primary vendor of perishable goods. In the ordinary course of business MMC delivers food products to Debtor's various locations multiple times per week and Debtor pays MMC's invoices twice per week. The last payment to MMC was made on October 31, 2023. Accordingly, the only outstanding amount owed to MMC are for food products delivered within days of Debtor filing its Petition. Debtor estimated the amount of goods delivered but not yet invoiced at $30,000.00.

[8] Debtor's estimated balance to FFCC includes approximately $2,600,000.00 owed by Debtor; approximately $223,000.00 owed by PTS and guaranteed by Debtor; and approximately $530,000.00 owed by JMAD and guaranteed by Debtor.

[9] Alliance Funding Group filed a UCC Financing Statement on December 29, 2022; however, Alliance's security agreement related to specific lease equipment/accessories and did not include cash assets.

## BASIS FOR RELIEF

30. 11 U.S.C. §§ 363(c)(2) & 1184 set the terms for a Court's approval for use of cash collateral, providing that a debtor "may not use, sell, or lease cash collateral . . . unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

31. Under sections 363(e) & 1184, upon request of an entity that has an interest in property to be used by the debtor, "the Court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

32. Adequate protection serves to protect secured creditors from a diminution in the value of its collateral during the Chapter 11 proceeding. *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich 1988).

33. Debtor has the burden of establishing that a secured creditor is adequately protected. 11 U.S.C. § 363(p).

34. "A debtor, attempting to reorganize a business under chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." *In re George Ruggerie Chrysler-Plymouth, Inc*, 727 F.2d 1017, 1019 (11th Cir. 1984).

## DEBTOR'S USE OF CASH COLLATERAL

35. The use of cash collateral is necessary to preserve the value of Debtor's estate and benefit its creditors.

36. Debtor requires use of the cash collateral to pay its employees and ordinary expenses of operating the business, such as insurance, rent, utilities, and inventory, as well as payment of post-petition professional expenses and fees as approved by this Court.

37. Debtor also requires use of the cash collateral to maintain and preserve assets, including repairs and maintenance of its equipment, machinery, and vehicles.

38. Accordingly, use of cash collateral is essential to avoid irreparable harm to Debtor by preventing Debtor from generating revenue sufficient to continue operating its business and to preserve the value of the estate.

39. Debor anticipates that it can operate at net neutral or a net-profit over the next 90 days while maintaining its historical pre-petition inventory. **See Exhibit B.**

40. Pursuant to the adequate protection identified below, Debtor submits that it should be granted authority to use the cash collateral.

## **OFFERS OF ADEQUATE PROTECTION OF SECURED CREDITORS**

41. As adequate protection for the use of the Cash Collateral described in Paragraphs 26-27, Debtor offers the following as adequate protection under 11 U.S.C. §§ 361 & 363 concerning any diminution in pre-petition collateral:

   a. Debtor will pay MMC's invoices in full as they become due in the ordinary course of business. MMC holds the first priority secured position against Debtor's cash collateral, and, upon information and belief, any amount invoiced to Debtor will be attributable to perishable goods provided within 20 days prior to Debtor filing its Petition or for perishable goods delivered in the ordinary course of business after Debtor files it's Petition.

   b. Debtor will pay First Franchise adequate protection payments of: (i) $30,000.00 per month; and (ii) $100,000.00 in a onetime lump-sum payment following entry of an order approving this Motion.

   c. Secured Creditors shall be granted continuing and replacement security interests in liens on all of the Debtor's post-petition property, excluding Debtor's rights under 11 U.S.C. §544 et seq.; however, nothing in this paragraph shall be deemed to provide any creditor with an <u>improvement</u> of position from the values of said creditor's respective collateral, as of the date of the Petition nor grant any interests in any property which said creditor does not have a properly perfected lien;

   d. The proceeds of any sale by Debtor of any property that is subject to liens held by Secured Creditors (other than sales in the ordinary course of business) shall, unless

said creditor agrees in conjunction with the approval of a sale under 11 U.S.C. § 363 of the Code or the Court orders otherwise, be paid to said creditor for application to said creditor's indebtedness; and

e. Debtor shall supply financial information and information relating to the collateral as is reasonably requested by each secured creditors. In the event that Debtor and the secured creditors cannot agree as to what report(s) shall be provided, the Court shall, upon notice and a hearing, make a determination. Debtor anticipates it will provide Secured Creditors with (i) profit & loss statements and balance sheets; (ii) payables aging; (iii) accounts receivable aging; (iv) copies of such reports and documents as are required to be filed with the Office of the United States Trustee; and (v) proof of timely payment of taxes and insurance.

42. Debtor believes these procedures will adequately protect the secured creditors.

43. Debtor's use of cash collateral pursuant to the order shall cease upon the occurrence of one of the following: (i) Debtor fails to comply with its promises of adequate assurance in any fashion; (ii) the appointment of a Chapter 11 trustee; (iii) conversion of this Chapter 11 proceeding to a Chapter 7; (iv) this Chapter 11 proceeding is dismissed without the consent of the Secured Creditors; or (v) a material diminution in the amount of the Debtor's cash collateral and, after notice and hearing, the Court determines that the cash collateral is in excess of any adequate protection provided herein. Debtor reserves its right to contest a default in the event that a secured creditor declares a default under this paragraph and, upon a determination by the Court that the adequate protection is intact, Debtor shall not be deemed in default hereunder.

## NOTICE

44. Notice of this Motion will be provided to (a) the United States Trustee for the Western District of Michigan and the trial attorney assigned to the case; (b) all creditors identified by Debtor which may have a secured claim in Cash Collateral; (c) Debtor's twenty largest unsecured creditors; (d) any other parties required to be served by Fed. R. Bankr. P. 4001; and (e) any party that has filed, prior to such date, a request for notices with this Court.

45.  Debtor further requests that the Court schedule a final hearing on this Motion and authorize it to serve copies of an interim order entered by the Court which fixes the time, date, and manner for the filing of objections to (a) the United States Trustee for the Western District of Michigan and the trial attorney assigned to the case; (b) all creditors identified by Debtor which may have a secured claim in Cash Collateral; (c) Debtor's top twenty unsecured creditors; (d) any other parties required to be served by Fed. R. Bankr. P. 4001; and (e) any party that has filed, prior to such date, a request for notices with this Court.  Debtor requests that the Court consider such notice of the final hearing to be sufficient under Fed. R. Bankr. P. 4001.

**WHEREFORE**, Denn-Ohio, LLC respectfully requests that this Honorable Court enter an order, substantially in the form attached as "**Exhibit C: Proposed Order**," granting the relief requested herein and such other and further relief as it deems just and proper.

Respectfully submitted,

**CBH Attorneys & Counselors, PLLC**

Dated: 11/1/23             By: _____
Steven M. Bylenga (P73492)
Attorneys for Denn-Ohio, LLC
25 Division Ave S., Suite 500
Grand Rapids, MI 49503
Phone: (616) 608-3061