# Exhibit A

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

IN THE MATTER OF:                                  Case No: 23 - 02533
                                                   Chapter 11, Subchapter V
DENN-OHIO, LLC,                                    Hon. John T. Gregg
                                                   Filed On: October 31, 2023

          Debtor.
_____/ /

## DECLARATION OF THOMAS F. PILBEAM, SR.

Thomas F. Pilbeam, Sr., being duly sworn, deposes and says:

1.     I am the Chief Operating Officer and Chief Financial Officer of Denn-Ohio, LLC ("Debtor" or "Company"). I am also the founder of the Debtor, along with one Jack E. Thompson ("Thompson")

2.     Prior to my involvement in the Debtor, which commenced in 2009, I was a franchise representative at Denny's® corporate office. At the time, it was common for those in management at Denny's® to consider (and be considered for) franchise ownership.

3.     In 2007, I organized PTS Hospitality, LLC as a Michigan Limited Liability Company under the Michigan Limited Liability Company Act by executing and filing Articles of Organization and executing an Operating Agreement. Through PTS Hospitality, LLC, I purchased three Denny's ® franchise locations.

4.     On October 20, 2009, Thompson and I organized Debtor as a Michigan Limited Liability Company under the Michigan Limited Liability Company Act by executing and filing Articles of Organization and executing an Operating Agreement.

5. Thompson already owned five Denny's® franchises through his company, JMAD Hospitality, LLC.

6. Thompson and I believed that by pooling our resources going forward, we could expedite future growth.

7. We each maintained our ownership interests in our respective companies, PTS and JMAD, but we agreed to form a new company together to operate new Denny's® locations.

8. From 2009 until 2019, Debtor experienced consistent financial success and growth.

9. At its highest point, Debtor, PTS, and JMAD operated 27 Denny's® locations.[1]

10. The Debtor's stores have been (and continue to be) all leased, rather than owned, as is common in the industry.

11. The Debtor currently operates ten Denny's® franchises located at:

    a. 3817 Cork Street, Kalamazoo, Michigan 49001;

    b. 3127 Plainfield Avenue, NE, Grand Rapids, MI 49505;

    c. 715 44th Street, SW, Wyoming, MI 49509;

    d. 6920 Central Avenue, Toledo, OH 43615;

    e. 26415 Warns Road, Perrysburg, OH 43551;

    f. 3019 Olentangy River Road, Columbus, OH 43202;

    g. 7735 State Road OH-37, Berkshire Township, OH 43074;

    h. 9935 State Road 41, Jeffersonville, OH 43128;

    i. 2008 North Mulberry Street, Elizabethtown, KY 42701; and

    j. 434 East Parkway, Louisville, KY 40217.

---

[1] Debtor operated 19 locations; PTS operated three locations; and JMAD operated five locations.

12. To purchase and operate their Denny's® franchise locations, Debtor, PTS, and JMAD entered into a joint financing arrangement with First Franchise Capital Corporation ("First Franchise") whereby each entity entered into a master loan agreement with First Franchise that was then cross collateralized with the other entities.

13. From 2017 through 2019, First Franchise extended a series of loans to Debtor, PTS, and JMAD with a collective initial balance of approximately $9,300,000.00. The current balances to First Franchise, which are cross-collateralized and cross-defaulted, are currently estimated at:

   a. Debtor – $2,600,000;
   b. JMAD – $530,000.00; and
   c. PTS - $223,000.00.

14. Although Debtor experienced substantial growth from 2009 to 2019, beginning in approximately 2020, economic challenges, some related to the Covid-19 pandemic and others more inherent to the restaurant business, negatively impacted its operations. For example, increased labor, food, and delivery expenses decreased Debtor's net operating income. Increased costs to complete required renovations and post-COVID trends towards increased delivery sales also resulted in additional economic hardship.

15. Thompson unexpectedly passed away in December of 2019, which created additional operational challenges.

16. In April of 2020, during the height of "shelter in place," First Franchise executed a Modification of Loan Agreement with Debtor, PTS, and JMAD, which temporarily suspended payments.

17. First Franchise and Debtor, PTS, and JMAD subsequently entered into a series of forbearance agreements. The last forbearance agreement expired on October 12, 2023.

18. As a result of the economic hardships Debtor experienced between 2020 and the Petition Date, Debtor closed nine underperforming locations.

19. Prior to filing its Petition, Debtor worked with its financial advisor, Timothy Morris of Pinnacle Commercial Capital, to analyze its finances and project its future income. A copy of the projections is attached to Debtor's Motion for Use of Cash Collateral as "Exhibit B."

20. Based on the analysis and projections, Debtor anticipates that it will close two additional underperforming locations in Toledo and Kalamazoo, which will result in the remaining eight stores producing sufficient sales to pay its ongoing reduced operating expenses and successfully reorganize its pre-bankruptcy debt through this Chapter 11 proceeding.

21. The Debtor employs approximately 85 full-time employees and 195 part time employees.

22. Debtor's employees rely on their employment income to pay necessary personal expenses. If Debtor delays a payroll distribution, many of its employees will likely immediately leave for what they view as more secure employment. Restaffing Debtor's locations would be time consuming and would result in substantial lost revenue.

23. In 2022, Debtor generated total receipts of $17,570,702.00 and net business income of ($1,303,339.00).

24. I believe that the liquidation value per store is less than $43,000.00. My estimation includes the following:

   a. Equipment: Based on a liquidation evaluation provided to me by Liquid Asset Partners, I believe that the liquidation value of the equipment at each Denny's® location is approximately $25,000.00.

b. Inventory: I believe that the liquidation value of the inventory is approximately $10,000.00 ($1,000.00 per location). Most of the inventory is perishable food products and/or proprietary to Denny's®.

c. Accounts Receivable: Debtor rarely carries significant accounts receivable. Debtor's customers pay in full on the date of service. However, in its ordinary course of operations, Debtor carries a one-week account receivable on its credit card sales. Debtor's arrangements with Denny's® provide that all credit card transactions will be processed through Denny's® corporate office, which then withholds all franchise fees and other costs before remitting the remaining balance to Debtor. As of the Petition Date, there was approximately $80,000.00 in accounts receivable owed from Denny's (estimated at $8,000.00 per store).

25. Additionally, I believe that each store has a "goodwill" value. These values vary, from store to store. Locations with negative EBITDA likely have little goodwill.

26. Prior to filing this Chapter 11 proceeding I contacted Denny's® corporate office, other franchise owners, commercial brokers, lenders, and investors to explore options to sell or refinance my franchises. Based on the feedback I received throughout those various conversations, I believe that the current demand for Denny's® locations is extremely limited.

27. The value of each Denny's® location depends on a range of national, regional, and local economic factors.

28. For purposes of my initial estimates, I estimated Debtor's total goodwill at $1,000,000.00.

29. This affidavit is submitted in support of various motions contemporaneously with the filing of the Petition in this cause ("First Day Motions").

30. I believe that the relief sought in each of the First Day Motions: (i) is necessary to enable the Debtor to operate in Chapter 11 with minimum disruption of its operations while it seeks to liquidate portions of its assets and reorganize on a reduced basis; (ii) is necessary to protect the Debtor's Estate from loss in value; (iii) constitutes critical elements in achieving a successful restructuring process; and (iv) best serves the Debtor's Estate, and its creditors.

31. All the facts set forth in this declaration are based on: (i) my personal knowledge, upon information supplied to me by others at the Debtor's business that I receive in the ordinary course; (ii) upon my review of relevant financial documents; (iii) my opinion based on my experience and knowledge of the Debtor's operation and financial condition; and (iv) my opinion based on information and analysis provided to me by professionals, such as accountants, financial advisors, and attorneys.

32. I reviewed the financial projections attached as "Exhibit B" to Debtor's Emergency Motion for Entry of an Interim and Final Order (A) Authorizing It to use Cash Collateral; and (B) Providing Adequate Protection and Other Relief. The estimates contained in Exhibit B are true and correct to the best of my knowledge, information, and belief.

33. If I were called to testify, I could and would testify competently to the facts set forth herein.

I, Thomas F. Pilbeam, Sr., declare under penalty of perjury under the laws of the United States of America that the foregoing information is true and correct to the best of my knowledge, information, and belief.

Dated: 10/31/23

By: *Thomas F. Pilbeam Sr.*

Thomas F. Pilbeam, Sr., as
Member of Denn-Ohio, LLC.